

# OFFICE OF THE ATTORNEY GENERAL OF TEXAS
## AUSTIN

GERALD C. MANN
ATTORNEY GENERAL

Honorable Holvey Williams
Criminal District Attorney          0-2648
Waco, Texas

Dear Sir:                    Opinion No. 0-2648
                             Re: Effect of divorce on appli-
                                 cation of nepotism statute.

We are in receipt of your request for our opinion
regarding the effect of divorce in applying the nepotism
statutes. A portion of your letter follows:

"A man and his wife who had one child were
divorced. The wife has applied for a position
in one of the public Schools of this county,
and a brother of the divorced husband is a mem-
ber of the School Board.

"We would like to have an opinion from your
department as to whether or not this would pre-
vent employment of the divorced wife as a teach-
er because of the Nepotism Laws of Texas. We
have found an opinion in 130 S. W. (2d) 379,
which holds that death of the husband where there
is a child does not sever the relationship, but
in our opinion there is a vast distinction be-
tween the status where it is caused by divorce,
because of the fact that in case of death the
wife would still inherit from the husband under the
laws of Texas and would be his heir, whereas, where
they were divorced before his death she would not.
Also, death is an involuntary separation and the
feeling between the parties of both families would
continue as though they were living together,
whereas divorce is a voluntary separation and this
feeling of kinship would not continue."

Article 432 of the Penal Code reads as follows:

NO COMMUNICATION IS TO BE CONSTRUED AS A DEPARTMENTAL OPINION UNLESS APPROVED BY THE ATTORNEY GENERAL OR FIRST ASSISTANT

Hon. Holvey Williams, page 2.

"No officer of this State or any officer of any district, county, city, precinct, school district, or other municipal subdivision of this State, or any officer or member of any State, district, county, city, school district or other municipal board, or judge of any court, created by or under authority of any general or special law of this State, or any member of the Legislature, shall appoint, or vote for, or confirm the appointment to any office, position, clerkship, employment or duty, of any person related within the second degree by affinity or within the third degree by consanguinity to the person so appointing or so voting, or to any other member of any such board, the Legislature, or court of which such person so appointing or voting may be a member, when the salary, fees or compensation of such appointee is to be paid for, directly or indirectly, out of or from public funds or fees of office of any kind or character whatsoever."

It is clear, from reading the above article, that a teacher may not be employed by a school district if related to a member of the school board within the second degree by affinity or the third degree by consanguinity.

The method of computing the degree of consanguinity is set out in the case of Tyler Tap Railroad Company and Douglass v. Overton, 1 Tex. Ct. of App. 268, wherein the court stated:

"In computing the degree of lineal consanguinity existing between two persons, every generation in the direct course of relationship between the two parties makes a degree, and the rule is the same by the civil and common law. The mode of computing degrees of collateral consanguinity at the common and by the canon law is to discover the common ancestor, to begin with him to reckon downwards, and the degree the two persons, or the more remote of them is distant from the ancestor, is the degree of kindred subsisting between them. For instance, two brothers are related to each other in the first degree because from the father

Hon. Holvey Williams, page 3.

each one of them is one degree. An uncle and nephew are related to each other in the second degree, because the nephew is two degrees distant from the common ancestor, and the uncle is extended to the remotest degree of collateral relationship."

Degrees of affinity are computed in the same manner as those of consanguinity. That is to say, the relation of the wife stands at the same degree of affinity to her husband's brother as the husband and his brother are related by consanguinity. Kelly v. Neely, 12 Ark. 657, 56 Am. Dec. 288; 2 C. J. 379; 2 C.J.S. 992; State v. Hooper, 140 Kan. 481, 37 P. (2d) 52.

It is well settled in Texas that upon a similar fact situation as outlined by you, where the marital relationship is dissolved by death of a spouse, the relationship by affinity continues, if the marriage has resulted in issue who are still living. Stringfellow v. State, 42 Tex. Cr. R. 588, 61 S.W. 719; Lewis v. O'Hair (Civ. App.) 130 S.W. (2d) 379; Page v. State, (Tex. Cr.) 22 Tex. App. 551. If there were no children such relationship is terminated. Lewis v. O'Hair, supra; our Opinions No. O-1257, approved Aug. 19, 1939; O-2383, approved June 11, 1940.

We have been unable to find any court decision for use as a precedent in determining the answer to your question, where the dissolution of marriage is effected by divorce rather than by death. The question for our determination is, conceding that the relationship by affinity continues after the dissolution of the marriage by death, does the same rule necessarily follow where the marriage relationship is extinguished by divorce?

As pointed out by you, the laws of descent and distribution in this state give the surviving spouse and the children of the deceased a common interest in the estate of the latter. Such is not the case by a divorcee, property rights being adjudicated or agreed upon incidental to the decree. Each party is divested of any interest in the others property.

Hon. Holvey Williams, page 4

You also suggest a distinction that death is an involuntary separation, whereas divorce is voluntary. You say that in the event of death of one spouse the feeling between the parties of both families would continue as though they were living together, whereas in divorce the same feeling would not continue. We think your statement generally true, but not without exception.

No one would contend that a divorce, however effective in dissolving the marriage and releasing the mutual rights and obligations of the parties as between themselves, would or could change the parental status of either party with respect to a child of such marriage. We cannot agree that the tie of filial responsibility would be any less binding in the one case than in the other. The nepotism law was enacted upon the theory that public policy demands that there be no official favoritism shown by those in authority to their kith and kin. The statute should be construed in the light of its purpose. We think the Courts of Texas would follow the reasoning of the cases cited herein where death permanently ended the marital status. It is therefore our opinion that so long as there is living issue, the school board could not legally employ the divorced wife of a brother of one of its members.

Yours very truly

ATTORNEY GENERAL OF TEXAS

APPROVED AUG 28, 1940

By _Benjamin Woodall_
Benjamin Woodall
Assistant

BW:jm

